## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| **JOSHUA LEE FERGUSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:13-22415** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 13 and 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Joshua Lee Ferguson (hereinafter referred to as "Claimant"), filed an application for SSI on June 8, 2010 (protective filing date), alleging disability as of August 1, 2008, due to a mental disorder, fibromyalgia, agoraphobia, post-traumatic stress disorder ("PTSD"), "bad nerves," and "metalslenosis reflux." (Tr. at 11, 210, 221.) The claim was denied initially and upon reconsideration. (Tr. at 58-59.) On January 28, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 87-90.) The hearing was held on April 11, 2011, before the Honorable David B. Daugherty. (Tr. at 53-57.) Also on that date, Claimant amended his alleged onset date to June 8, 2010. (Tr. at 186.) By decision dated May 5, 2011, the ALJ determined that Claimant was entitled to benefits. (Tr. at 63-68.) On August 5, 2011, the Appeals Council vacated and remanded the ALJ's decision because there was an error of law, and therefore, the ALJ's findings and

conclusions were not supported by substantial evidence.[1] (Tr. at 69-74.)

On remand, a further hearing was held on July 5, 2012, before the Honorable Jerry Meade. (Tr. at 31-52.) By decision dated August 28, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-25.) The ALJ's decision became the final decision of the Commissioner on June 29, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On August 30, 2013, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

---

[1] In finding Claimant disabled, the ALJ primarily relied on the assessment of Ms. Duling, an examining psychologist. (Tr. at 70.) The Appeals Council noted that Ms. Duling did not conduct any psychological testing or evaluation, and simply offered her diagnoses and a medical source statement regarding Claimant's ability to work. (Id.) The Appeals Council concluded that her opinions were inconsistent with the record as a whole and that her notes primarily reflected Claimant's subjective complaints. (Tr. at 70-71.) The Appeals Council noted that Claimant reported having felt better with an increased dosage of Klonopin and that her GAF scores increased from the serious symptoms range to the moderate range within a six month period of time. (Tr. at 71.) As a result of the ALJ's reliance on Ms. Duling's opinions, the ALJ gave little weight to the opinion of Dr. Allen, a state agency psychological consultant who concluded that although Claimant's mental impairments were severe, he was able to work with no public interaction. (Id.) He assessed moderate limitations in social functioning and mild limitations in maintaining activities of daily living, concentration, persistence, and pace. (Id.) The Appeals Council also concluded that the ALJ failed to consider whether Claimant's cannabis use was a contributing factor to his disability. (Id.) On remand, the Appeals Council instructed the ALJ to obtain additional evidence and testimony from a medical and vocational expert, if necessary, and further evaluate Claimant's credibility and RFC. (Tr. at 71-72.) If the ALJ determined that Claimant was disabled, the Appeals Council instructed the ALJ to consider whether his drug use was a contributing factor. (Tr. at 72.)

disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since June 8, 2010, the application date. (Tr. at 14, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "post-traumatic stress disorder; panic disorder with agoraphobia; and depressive disorder," which were severe impairments. (Tr. at 14, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's

impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform work at any exertional level with the following non-exertional limitations:

> [N]on-exertionally, [Claimant] is limited to simple, routine, repetitive tasks; can only work in a low stress job (defined as a job that requires only occasional decision making and has only occasional changes in the work setting); can have no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. at 19, Finding No. 4.) At step four, the ALJ found that Claimant was capable of performing his past relevant work as a warehouse worker. (Tr. at 23-24, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform other jobs such as an industrial cleaner at the heavy level of exertion, a laundry worker at the medium level of exertion, a marker/labeler and machine tender/operator at the light level of exertion, and a bench worker and hand packer at the sedentary level of exertion. (Tr. at 24, Finding No. 5.) On these bases, benefits were denied. (Tr. at 24, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on November 12, 1986, and was 25 years old at the time of the second administrative hearing, July 5, 2012. (Tr. at 24, 37.) Claimant had an eighth grade, or limited education, and was able to communicate in English. (Tr. at 24, 37.). Claimant had past relevant work as a warehouse worker. (Tr. at 23-24, 49.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ improperly assessed Claimant's credibility. (Document No. 13 at 5-8.) Citing <u>Coffman v. Bowen</u>, 829 F.2d 514 (4th Cir. 1987), Claimant argues that he satisfied the requirements of 42 U.S.C. § 423(d)(5)(A), as his allegations and the medical evidence are mutually supportive. (<u>Id.</u> at 6-7.) He further argues that the ALJ utilized boilerplate credibility language which warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (<u>Id.</u> at 7.) Although the ALJ recited in his decision observations of Claimant's past history and his activity level, he failed to explain how the evidence undermined Claimant's credibility in light of the objective medical evidence For these reasons, Claimant contends that remand is required for further consideration of his credibility. (<u>Id.</u> at 8.)

In response, the Commissioner asserts that the ALJ specifically considered Claimant's credibility of his subjective complaints pursuant to the Regulations and properly found that the medical evidence did not support the frequency or symptom severity of his impairments. (Document No. 14

at 9-13.) The Commissioner asserts that although the treatment notes documented Claimant's subjective complaints, they alone do not establish significant functional limitations. (Id. at 10.) The Commissioner further asserts that Claimant relies on the incorrect legal standard, the mutually supportive test, in evaluating credibility when the Regulations actually are the authoritative standard. (Id.) The Commissioner notes that the ALJ acknowledged that Claimant's anxiety improved and that he made significant strides in leaving his home, became more compliant with therapy appointments, actively engaged in conversations, was able to vent his feelings, and gained insight into the nature of his difficulties. (Id. at 11.) Additionally, the Commissioner notes the ALJ's acknowledgment of Claimant's improved depressive and post-traumatic symptomatology. (Id. at 12.) Thus, the Commissioner asserts that the ALJ properly considered Claimant's credibility and generously accounted for his mental impairments in his RFC assessment. (Id. at 11-12.)

Regarding the ALJ's use of boilerplate, the Commissioner asserts that Claimant's reliance on Bjornson v. Astrue, 671 F.3d 640 (7tha Cir. 2012), as support for remand, is misplaced. (Document No. 14 at 12.) The Commissioner asserts that in Bjornson, the court remanded the case due to the ALJ's use of boilerplate language and because the ALJ failed to "build a bridge" between the medical evidence and the plaintiff's testimony and his RFC finding. (Id.) In this case, the Commissioner contends that the ALJ devoted nearly four pages of discussion of the medial evidence that did not support Claimant's disabling allegations, and that his explanation built a bridge between the evidence and his finding that Claimant's statements were not credible to the extent that they were inconsistent with his assessed RFC. (Id.) The Commissioner, therefore, contends that Claimant failed to carry his burden of establishing significant functional limitations and that the ALJ properly considered his credibility and assessed his RFC. (Id. at 13.)

Claimant also alleges that the ALJ's decision is not supported by the substantial evidence of

6

record because the ALJ failed to give proper weight to the opinions of his treating psychiatrist, Dr. Razavipour and treating therapist, Mr. Booth. (Document No. 13 at 8-11.) Claimant states that Dr. Razavipour assessed extreme limitations and that he and Mr. Booth stated on separate occasions that he remained an unlikely candidate for work for 12 to 24 months. (Id. at 10.) Based on Dr. Razavipour's limitations, the VE testified that Claimant was incapable of working. (Id.) He asserts that the ALJ erred in giving his opinion little weight, which was validated by Ms. Duling. (Id.)

In response, the Commissioner asserts that the ALJ properly evaluated Dr. Razavipour's and Mr. Booth's statements, but found that their statements were conclusory, which was an issue reserved to the Commissioner. (Document No. 14 at 14.) The ALJ properly found that Dr. Razavipour's opinions were inconsistent with his treatment notes and the evidence of record, including the opinion of Dr. Allen, a state agency physician. (Id. at 14-15.) The Commissioner asserts that Claimant essentially alleges that the Court should re-weigh the evidence of record and substitute its judgment for that of the ALJ, which is improper. (Id. at 15.) Accordingly, the Commissioner asserts that the ALJ properly considered the opinions of Dr. Razavipour and Mr. Booth. (Id.)

 The Medical Record.

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

***Physical Impairments***:

Claimant initiated care at Valley Health with Scott Davis, M.D., on September 10, 2009. (Tr. at 393-95, 409-11.) Prior thereto, Claimant saw Dr. Chaney, who, according to Claimant, believed that he had a component of fibromyalgia as there was a family history and he complained of weakness and fatigue for the past three years. (Tr. at 395, 411.) On physical examination, Dr. Davis observed that Claimant had pain to palpation that was inconsistent with the degree of palpation of the muscles in the

lumbar back and trapezius muscles. (Tr. at 394, 410.) Claimant had full range of motion, intact sensation and motor strength, and normal deep tendon reflexes, but had some crepitus in the bilateral knees, which Claimant reported was painful. (Id.) Dr. Davis assessed a possible component of fibromyalgia versus malingering, and sent Claimant for physical therapy for strengthening and stretching exercises of the hamstrings and lumbar back. (Id.) He prescribed Zanaflex and continued his Lyrica. (Tr. at 393-94, 409-10.) His medications were adjusted on October 22, 2009. (Tr. at 392, 408.)

Claimant failed to show for appointments scheduled on March 31 and April 7, 2010. (Tr. at 403.) On April 19, 2010, Claimant was seen for a routine follow-up. (Tr. at 386, 402.) Dr. Davis noted that Claimant's main problems included depression and anxiety and that he was not compliant with home exercises or physical therapy. (Id.) Dr. Davis noted on July 12, 2010, that Claimant was compliant with his Lyrica and it was decreased from 150mg to 100mg at Claimant's request due to the Klonopin he was taking. (Tr. at 384, 400.) On October 4, 2010, Claimant was seen for follow-up of his depression, for which he was prescribed Klonopin, Remeron, Propranolol, and Paxil by Dr. Razavipour. (Tr. at 398.) Dr. Davis continued Claimant's medications. (Id.) Regarding his fibromyalgia, Dr. Davis noted that Claimant had no active trigger points and continued him on Lyrica, Loratadine, and Flonase. (Id.)

On August 31, 2010, Dr. Fulvio Franyutti, M.D., a State agency reviewing consultant, completed a form Physical RFC Assessment, on which he opined that there was insufficient medical evidence. (Tr. at 354-61.)

***Mental Impairments***:

On March 12, 2010, Claimant presented to Prestera Mental Health Center for reassessment and to determine continued treatment needs. (Tr. at 345-46.) His appointment initially was scheduled on

January 13, 2010, but Claimant failed to appear. (Tr. at 325.) Claimant reported nervousness, anxiousness, and depression. (Tr. at 345.) He reported symptoms of hopelessness and helplessness, isolation, panic attacks, fear, agoraphobia, and poor appetite. (Id.) He denied suicidal and homicidal ideation, but admitted to a prior suicidal attempt. (Id.) Claimant further reported that he failed to maintain proper bathing, was not eating well, and avoided social contact even with close family members. (Id.) Clinician Mark Brown diagnosed panic disorder with agoraphobia and depressive disorder NOS and assessed a GAF of 50.[2] (Tr. at 343.) Mr. Brown recommended psychiatric re-evaluation, treatment and medication reviews, and psychotherapy twice a month to address the cognitive distortions underlying his agoraphobia, panic, and depression. (Tr. at 345.) On March 26, 2010, Claimant underwent an individual therapy session to address avoidance of primary trauma memories, thoughts, and flashbacks resulting from having seen a man shot in the head and having been raised in a household with parental outbursts. (Tr. at 326.)

On April 5, 2010, it was noted on mental status examination that Claimant was calm and cooperative, reported that he was nervous, and was anxious. (Tr. at 324.) His thought process was goal-directed, he was oriented and of average intelligence, and had intact memory and concentration. (Id.) Claimant failed to appear for his appointment on April 9, 2010. (Tr. at 328.) On April 14, 2010, Claimant reported increased anxiety and social withdrawal at isolation levels. (Tr. at 329.) Mr. Brown observed that he was very quiet, reserved, and lacked confidence. (Id.) On May 6, 2010, Claimant's medications were adjusted. (Tr. at 333.) Claimant failed to appear for his appointments on May 14 and June 15, 2010. (Tr. at 331-32.)

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has serious symptoms, or serious impairment in social, occupational or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

On April 19, 2010, Claimant's treating psychiatrist, Dr. Nika Razavipour, M.D., and his therapist, J. Mark Booth, M.A., opined in a letter to the West Virginia Department of Health and Human Services that Claimant remained "an unlikely candidate for work for the next twelve to twenty-four months, depending on finding medication that effectively treats his symptoms and his ability to cope with stressors emotionally and behaviorally." (Tr. at 349.) Dr. Razavipour further opined that Claimant was unable to attend "any public meetings, forums or exposure to groups of people due to his extreme agoraphobia." (Id.) On September 2, 2010, Dr. Razavipour assessed a GAF of 56,[3] which was indicative of only moderate symptoms. (Tr. at 425.) On October 14, 2010, Claimant reported that he felt better with an increased dosage of Klonopin and the addition of Paxil. (Tr. at 426.) Dr. Razavipour assessed a GAF of 58. (Id.)

On December 8, 2010, Dr. G. David Allen, Ph.D., completed a form Psychiatric Review Technique, on which he opined that Claimant's depressive disorder NOS and panic disorder with agoraphobia resulted in mild limitations in maintaining activities of daily living, concentration, persistence, or pace; moderate difficulties in maintaining social functioning; and no episodes of decompensation of extended duration. (Tr. at 431-44.) Dr. Allen also completed a form Mental RFC Assessment, on which he opined that Claimant's mental impairments resulted in moderate limitations in his ability to interact appropriately with the general public and to travel in unfamiliar places or use public transportation. (Tr. at 427-29.) Dr. Allen found that Claimant was not limited significantly in all other functional areas. (Id.) Dr. Allen noted that the treatment record reflected some improvement for Claimant's affective and anxiety disorders and that he retained sufficient residual functional

---

[3] A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

capacity "for work-related activities that can occur without demand to interact with [the] public." (Tr. at 429.)

On April 7, 2011, Michelle Duling, M.A., a licensed psychologist, conducted a clinical interview at the request of Claimant's attorney. (Tr. at 457.) Ms. Duling diagnosed panic disorder with agoraphobia; major depressive disorder, recurrent, severe without psychotic features; posttraumatic stress disorder; and assessed a GAF of 40.[4] (Id.) She also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which she opined that Claimant had extreme limitations in his ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. at 458-60.) She assessed marked limitations in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions and mild limitations in his ability to make judgments on simple work-related decisions. (Id.) She found no limitation in Claimant's ability to understand, remember, and carry out simple instructions. (Tr. at 458.) In support of her opinions, Ms. Duling noted that Claimant's education continued through the eighth grade and that he suffered from severe anxiety and depression that impacted his concentration, attention, and judgment. (Id.) She noted that Claimant had extreme agoraphobia and avoided going to grocery stores and medical appointments and stayed up all night worrying if he had an appointment to attend. (Tr. at 459.) She further noted that Claimant's mood stability, reliability, and dependability were affected by his mental impairments. (Id.) Ms. Duling noted that Claimant had severe depression accompanied by feelings of fear each morning, sleep difficulties, decreased appetite and energy, suicidal ideation,

---

[4] A GAF of 31-40 indicates that the person has some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

and intrusive thoughts, memories, and dreams of past traumas. (Id.)

On August 11, 2011, Dr. Razavipour completed a form Mental Status Statement of Ability to Do Work-Related Activities (Mental), on which he opined that Claimant's mental impairments were severe, his prognosis was poor, and he had a GAF of 50. (Tr. at 461-64.) Dr. Razavipour assessed extreme limitations in Claimant's ability to interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations and to change in a routine work setting; and marked limitations in his ability to understand, remember, and carry out complex instructions and to make complex judgments on work-related decisions. . (Tr. at 462.) He assessed moderate limitations in Claimant's ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions. (Id.) Dr. Razavipour also assessed the severity of Claimant's symptoms and noted that he had extreme generalized persistent anxiety, apprehensive expectation, recurrent and severe panic attacks, and persistent irrational fear of a specific object, activity, or situation. (Tr. at 462-63.) He assessed marked motor tension and sleep disturbance; moderate pervasive loss of interest in almost all activities, appetite disturbance with weight change, mood disturbance, and blunt, flat, or inappropriate affect. (Id.) On average, Dr. Razavipour opined that Claimant would be absent from work five or more days a month. (Tr. at 463.) Finally, Dr. Razavipour noted that Claimant had severe anxiety in public places, was very reclusive and isolative; and was "unable to pursue any gainful employment." (Tr. at 464.)

Dr. Razavipour completed a further assessment on June 29, 2012, Dr. Razavipour again opined that Claimant's mental impairments were severe, and his prognosis was poor, but that his GAF had increased from 50 to 55. (Tr. at 555-58.) He opined that Claimant's abilities had decreased and opined that his ability to carry out simple instructions and make judgments on simple work-related decisions had increased in severity to marked limitations and that his ability to make judgments on complex

work-related decisions had increased to extreme in severity. (Tr. at 556.) He also assessed moderate symptoms of pervasive loss of interest in almost all activities, appetite disturbance with weight change, and blunt, flat, or inappropriate affect. (Id.) He also assessed marked symptoms of generalized persistent anxiety and emotional withdrawal or isolation. (Id.) Finally, he assessed extreme symptoms of motor tension and sleep disturbance. (Tr. at 557.) All other assessments remained constant from the last evaluation. (Tr. at 556-57.) He further opined that Claimant was unable to be around people and was very nervous, shaky, and apprehensive. (Tr. at 558.)

Analysis.

Claimant alleges that the ALJ erred in assessing his credibility. (Document No. 13 at 5-8.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Craig v. Chater, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing Craig v. Chater, 76 F.3d at

13

595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

15

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 19.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-23.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 20.)

In assessing Claimant's pain and credibility, the ALJ provided an overview of Claimant's testimony and reports. (Tr. at 19-20.) He then analyzed Claimant's testimony and reports and contrasted it with the medical evidence. (Id.) Regarding Claimant's fibromyalgia, the ALJ noted references to possible malingering and noncompliance with recommended treatment. (Tr. at 14-15.) Moreover, the evidence indicated that Claimant's condition improved and on his last documented follow-up exam, there were no trigger points noted. (Tr. at 15, 386, 394, 398, 402, 410.) The ALJ further noted that Claimant was capable of performing a "wide array of physical activities, at a regular

16

pace." (Tr. at 15.) These activities included cleaning the house, caring for and playing with his children, and walking extended distances. (Tr. at 15, 240-47) The ALJ, therefore, determined that Claimant was a "relatively healthy individual who is not significantly limited in his ability to function from a physical standpoint." (Tr. at 15.)

Respecting Claimant's mental impairments, the ALJ assessed Claimant's credibility pursuant to the Regulations and Rulings. (Tr. at 15-18, 20-23.) The ALJ properly assessed Claimant's functional limitations in the four broad functional areas and determined that Claimant had mild limitations in maintaining activities of daily living; moderate limitations in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 17-18.) Although Claimant reported an inability to engage in former hobbies, the ALJ noted that he engaged in some pastimes, including watching television, playing games, and visiting others. (Tr. at 17.) Moreover, Claimant was able to manage his banking needs, required no encouragement or assistance in caring for his personal needs, and was able to pay bills and count change. (Id.) Furthermore, with continued treatment, Claimant expressed increased desire and ability to leave his home and engaged in therapy sessions. (Tr. at 17, 22.) He maintained good interaction with authority figures and easily established rapport. (Id.) Thus, the ALJ adequately considered Claimant's activities.

The ALJ also acknowledged that Claimant's mental health treatment consisted of counseling or therapy and medication. (Tr. at 21-23.) He noted that Claimant's mental health conditions increased with treatment as evidenced by increased GAF scores and Claimant's desire to leave the house. (Id.) Furthermore, Claimant reported that he felt better with the increased dosage of Klonopin and had a positive response to Cymbalta. (Tr. at 21, 426.) The ALJ also considered the opinion evidence of record. (Tr. at 15-19, 20-23.)

Claimant argues that under the mutually supportive test recognized in Coffman v. Bowen, 829

17

F.2d 514 (4th Cir. 1987), that he satisfies the requirements of 42 U.S.C. § 423(d)(5)(A), because the evidence of record, including his testimony and statements, is supported by substantial evidence. (Document No. 13 at 6-7.) Claimant has misinterpreted the holding in Coffman. In that case, the issue was not one of credibility but whether the ALJ applied the appropriate standard in weighing the treating physician's opinion that the claimant was disabled from gainful employment. Coffman, 829 F.2d at 517-18. The Fourth Circuit concluded that the ALJ had misstated the legal principles and standards and improperly discounted the physician's opinion due to a lack of corroborating evidence. Id. at 518. The Court held that the correct standard required a treating physician's opinion to be "ignored *only* if there is persuasive contradictory evidence." Id. There, the physician provided medical reports with his opinion letter. Id. The record also included findings of two other physicians and the testimony of the claimant. Id. In view of the of the supporting evidence, the Fourth Circuit noted that [b]ecause Coffman's complaints and his attending physician's findings were mutually supportive, they would satisfy even the more exacting standards of the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A)." Id. Accordingly, the undersigned finds contrary to Claimant's argument that Coffman fails to offer any "mutually supportive" test applicable to assessing a claimant's credibility. For the reasons set forth herein, the undersigned finds Coffman inapposite and Claimant's argument without merit.

Claimant also argues that the ALJ's use of boilerplate credibility language warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Document No. 13 at 7-8.) Pursuant to SSR 96-7p, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." Id. The decision "must contain specific reasons for the

finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In this case, it is clear that the ALJ used boilerplate language regarding the two-step credibility analysis. (Tr. at 19-23.) Despite the use of some boilerplate language, the ALJ explained the specific reasons for his credibility determination and specifically cited the medical evidence, Claimant's testimony and reports, Claimant's activities, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and the Fourth Circuit has not enunciated any format that should be utilized in finding a claimant's testimony incredible. In finding that Claimant was not credible, the ALJ indicated the weight given to Claimant's testimony. In view of the foregoing, the undersigned finds that the ALJ conducted a thorough analysis of the relevant evidence, weighed the medical source opinions, and adequately explained his reasons for discounting the credibility of Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms. Accordingly, pursuant to SSR 96-7p, the Court finds that the ALJ's credibility finding sufficiently was articulated and explained with references to the specific evidence that formed her decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

2. Treating Opinion.

Claimant also alleges that the ALJ erred in failing to give proper weight to Dr. Razavipour's and Mr. Booth's opinions. (Document No. 13 at 8-11.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner

19

"will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and

(2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In his decision, the ALJ gave the opinions of Dr. Razavipour and Mr. Booth little weight because they provided conclusory statements that Claimant remained an unlikely candidate for work for the next 12 to 24 months, which was an issue reserved to the ALJ. (Tr. at 22.) Furthermore, the ALJ determined that Dr. Razavipour's opinions were inconsistent with his own treatment notes and the other substantial evidence of record. (Tr. at 22-23.) The ALJ noted that despite Claimant's subjective reports, objective observations indicated that Claimant responded to medication overall continued to progress in treatment. (Tr. at 22.) Claimant was able to maintain a positive attitude, replace irrational thoughts with rational thoughts, worked toward goals, kept therapy appointments on a more regular basis, and had a desire to get out of his house. (Id.) Furthermore, Claimant's GAF score increased to 56, which was indicative of only moderate symptoms. (Tr. at 22-23.) Claimant also began actively engaging in therapy sessions, was able to vent his feelings, gained insight into the nature of his difficulties, and was more compliant with treatment as he continued with medications and therapy

sessions. (Tr. at 22-23.) The ALJ determined that the opinion of Dr. Allen was more consistent with the evidence of record and gave his opinion greater weight. (Tr. at 23.) In view of the foregoing, the Court finds that the ALJ's decision to accord little weight to Dr. Razavipour's and Mr. Booth's opinions is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.       The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge